990 So.2d 665 (2008)
STATE of Florida, Appellant,
v.
Benjamin Franklin KNOX, Appellee.
No. 5D07-3985.
District Court of Appeal of Florida, Fifth District.
September 12, 2008.
*666 Bill McCollum, Attorney General, Tallahassee, and Rebecca Rock McGuigan, Assistant Attorney General, Daytona Beach, for Appellant.
James S. Purdy, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellee.
EVANDER, J.
The State appeals a downward departure sentence imposed on Knox after he pled nolo contendere to an attempted first degree murder charge. Because the grounds for departure stated by the trial court were either legally insufficient or factually unsupported, we reverse.
The record reflects that the victim, Michele Marks, was Knox's ex-girlfriend and the mother of his five-year-old son. On the day in question, Marks had called Knox to ask him to take the child to school. Knox refused and therefore Marks left the residence to borrow her aunt's car. When she returned home, Marks saw that her front door had been kicked in and Knox was standing in her yard. After a verbal confrontation, Knox began to chase Marks. Knox's brother, who had just arrived on the scene, unsuccessfully attempted to restrain Knox. Knox eventually picked up a six-inch kitchen knife and stabbed Marks four times in the back. At the time that she was stabbed, Marks was holding the parties' son.
*667 After the stabbing, Knox's brother took Marks to the hospital. Knox went to his mother's house and called the police. When the police arrived, Knox admitted to his criminal actions. Knox was arrested and subsequently charged with one count of attempted first degree murder, child abuse, and burglary of a dwelling. He later entered an open plea to the court solely on the count of attempted first degree murder. In return, the State nolle prossed the other two charges.
At the sentencing hearing, both Knox and Marks testified that the attack resulted from Knox's drug problem. Knox related that he had not been "in my right state of mind ... [because] that's how much I was on drugs at that time." Marks told the judge that she loved Knox and that he was in need of substance abuse treatment. She also believed that incarcerating Knox would punish her son as well as Knox's other two children. There was also evidence that Knox was receiving social security disability, although the testimony concerning the basis for disability payments was conflicting. Marks testified that Knox received social security disability because of his "crippled" hand. Knox's niece testified that Knox's disability was based on his high blood pressure, while Knox testified he received social security disability because "his hand was bending up on him" and also for "mentally."
The prosecutor observed that Knox had an extensive criminal recordfive prior felonies and fifteen misdemeanor convictions. Pursuant to the Criminal Punishment Code scoresheet, Knox's sentence computation called for a minimum incarcerative sentence of 6.18 years with a maximum sentence of 30 years. The State requested that the court impose a prison sentence "in excess of the bottom of the guidelines." The State further advised the court that "[the State] had not waived the guidelines." The trial court then announced that it would impose a downward departure sentence of ten year drug offender probation. In its written order, the trial court set forth the following grounds for its departure:
1. The defendant is currently on Social Security Disability for an organic mental disorder, which requires specialized treatment, and said disorder is unrelated to substance abuse or addiction; the defendant is also on Social Security Disability for arthritis, hypertension, and collagen disorder and is amenable to treatment.
2. The defendant fully cooperated with the State to resolve the current offense by immediately calling the appropriate law enforcement agency after committing the crime and voluntarily confessed to his criminal act.
3. The offense in this case was committed in an unsophisticated manner and was an isolated domestic incident for which the defendant has shown remorse.
4. At sentencing, the victim testified about the circumstances surrounding the crime, and while not diminishing the defendant's guilt, specifically requested the court to not incarcerate the defendant and to place him on probation.
A trial court, at a minimum, must impose the lowest permissible sentence calculated according to the Criminal Punishment Code unless the court finds that the evidence supports a valid reason for a downward departure. § 921.00265(1), Fla. Stat. (2006); see also State v. Tyrrell, 807 So.2d 122, 125 (Fla. 5th DCA 2002). To determine whether a downward departure sentence is appropriate, the trial court must follow a two-step process. Banks v. State, 732 So.2d 1065, 1067 (Fla.1999).
In the first step, the trial court must determine whether there is a valid legal basis for the departure sentence that is *668 supported by facts proven by a preponderance of the evidence. Banks, 732 So.2d at 1067. The defendant bears the burden of proof. State v. Mann, 866 So.2d 179, 181 (Fla. 5th DCA 2004). This step is a mixed question of law and fact and will be sustained if the trial court applied the right rule of law and if competent substantial evidence supported its ruling. State v. Subido, 925 So.2d 1052, 1057 (Fla. 5th DCA 2006).
The second step requires the trial court to determine whether the departure sentence is the best sentencing option for the defendant after consideration of the totality of the circumstances. Banks, 732 So.2d at 1068. This step is reviewed pursuant to an abuse of discretion standard. See Subido, 925 So.2d at 1057; Mann, 866 So.2d at 181. In the present case, we do not need to consider the second step because the reasons articulated by the trial court for its downward departure sentence were either invalid or not supported by competent substantial evidence. We will address each of the stated reasons separately.
The trial court's first stated reason for imposing a downward departure sentence involved Knox's alleged physical and mental disabilities. A trial court may impose a downward departure sentence where a defendant requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction, or for a physical disability, provided the defendant is amenable to treatment. § 921.0016(4)(d), Fla. Stat. (2006). To establish a need for specialized treatment, a defendant must show that the treatment is not available in the Department of Corrections. See Mann, 866 So.2d at 182; Tyrrell, 807 So.2d at 127-28; State v. White, 755 So.2d 830, 832 (Fla. 5th DCA 2000). In the present case, there was no evidence that Knox required specialized treatment, nor was there evidence supporting the trial court's determination that Knox suffered from "an organic mental disorder." The witnesses that testified at the sentencing hearing agreed that Knox's "mental" problem was the result of his substance abuse. The Legislature has expressly determined that a defendant's impairment due to substance abuse or addiction is not a valid reason for departure. State v. Gilson, 800 So.2d 727, 730 (Fla. 5th DCA 2001).
The second reason given by the trial court to support its downward departure sentence was that Knox "cooperated" with the State by contacting law enforcement and confessing to his criminal act. See § 921.0016(4)(i), Fla. Stat. (2006). A defendant's cooperation with the State can only be a basis for a downward departure sentence where the defendant's assistance results in solving a crime or the arrest of other persons. State v. White, 894 So.2d 293, 294 (Fla. 2d DCA 2005). A downward departure sentence is not justified merely because the defendant cooperated after his offense was discovered because that cooperation did not solve a crime. Id.; see also State v. Ertel, 886 So.2d 423, 425 (Fla. 2d DCA 2004); State v. Bleckinger, 746 So.2d 553, 555 (Fla. 5th DCA 1999). Here, Marks and Knox's brother had obviously "discovered" Knox's crime prior to his telephone call to police.
The third reason articulated by the trial court was that the offense was committed in an unsophisticated manner and was an isolated incident for which Knox showed remorse. § 921.0016(4)(j), Fla. Stat. (2006). To support a departure based on this reason, all three elements must be shown: 1) that the offense was committed in an unsophisticated manner; 2) that it was an isolated incident; and 3) that the defendant has shown remorse. Mann, 866 So.2d at 183. The record supports the trial court's finding that Knox showed remorse. However, the record does not support the first *669 two elements. Knox's actions of kicking in his ex-girlfriend's door, verbally confronting her, chasing her, and then stabbing her four times with a knife, cannot be deemed to be "unsophisticated." See State v. Chestnut, 718 So.2d 312 (Fla. 5th DCA 1998); State v. Morales, 718 So.2d 272 (Fla. 5th DCA 1998). Furthermore, Knox's crime was not an isolated incident. He had previously been convicted of fifteen misdemeanors and five feloniessale and delivery of cocaine, carrying a concealed firearm, resisting an officer with violence, and possession of cocaine (twice). An "isolated incident" cannot be found simply because a defendant's numerous prior convictions do not include the offense for which he is being sentenced. State v. Ayers, 901 So.2d 942, 945 (Fla. 2d DCA 2005); see also State v. Deleon, 867 So.2d 636 (Fla. 5th DCA 2004). A defendant's extensive prior criminal record precludes a showing that an offense was an isolated incident. Ayers, 901 So.2d at 945.
The trial court also found that a downward departure sentence was justified based on the victim's request for a non-incarcerative sentence. Although not set forth in its written order, the trial court additionally articulated a concern that Knox's children needed their father. Neither of these non-statutory mitigators is grounds for a downward departure. Generally, mitigating circumstances supporting a downward departure ameliorate the level of the defendant's culpability. In evaluating a non-statutory mitigator, a court must determine whether the asserted reason for a downward departure is consistent with legislative sentencing policies. Rafferty v. State, 799 So.2d 243, 248 (Fla. 2d DCA 2001); see also Chestnut. Given the particularly violent nature of the defendant's act against his ex-girlfriend, we do not believe that the victim's request for leniency should be a basis for a downward departure sentence. Additionally, the fact that a defendant has a minor child has previously been rejected as grounds for downward departure. See Rafferty, 799 So.2d at 248.
Finally, we reject the defendant's argument that the State failed to preserve this issue for appellate review. The record reflects that the prosecutor offered evidence of Knox's significant record, argued against the existence of statutory mitigators and requested an incarcerative sentence in excess of 6.18 years. Prior to announcing its decision, the trial court acknowledged that the State "had not waived the guidelines." An issue is preserved for appeal if the articulated concern is sufficiently specific to inform the court of the perceived error. State v. Stephenson, 973 So.2d 1259, 1262 (Fla. 5th DCA 2008).
We reverse and remand for imposition of a guidelines sentence. State v. Norris, 724 So.2d 630 (Fla. 5th DCA 1998).
REVERSED and REMANDED.
MONACO and COHEN, JJ., concur.