SALTER, J.
The State of Florida appeals orders granting downward departures from the sentencing guidelines for two co-defendants. We reverse. In the case of defendant and appellee Elizabeth Torres,[1] the State was not afforded a reasonable opportunity to depose Ms. Torres’ expert witness on the primary issues presented by the defense motion (impaired capacity to appreciate the criminal nature of her conduct or to conform that conduct to the requirements of the law, and her need for specialized treatment for certain mental disorders) and to present a State psychiatric expert in response. Other findings in the order were not pertinent to the downward departure statutory provisions and were not supported by competent substantial evidence.
In the case of defendant Gerald Massin-gill,[2] there was no record evidence to support findings that he was a “relatively minor participant in the criminal conduct,” that the offense was committed in an unsophisticated manner, or that it was an “isolated incident” for which he showed remorse.

The Charges and Course of Proceedings

The defendants were charged with aggravated abuse and neglect of Ms. Torres’ uncle,[3] Louis Makrez, under section 825.102(2), Florida Statutes (2007). The elderly victim, the two defendants, and Ms. Torres’ son lived together in Miami in a home owned by the victim. The uncontro-verted facts[4] are that Ms. Torres obtained from the victim a power of attorney at some time in April 2007 for the purpose of selling the victim’s residence. Using the power of attorney, Ms. Torres sold the home in June 2007 and placed approximately $126,000 in net proceeds in a joint bank account in her name and the victim’s name. The sales price was substantially below the home’s market value. Ms. Torres used approximately $90,000 of the net proceeds for shopping and living expenses before the remaining balance was frozen by a court. In October 2007 a workman *679 saw the victim in an emaciated condition, lying in his own waste, and called fire/rescue. The victim lived another two months before passing away.
After the aggravated elder abuse/neglect charges were brought by the State, the defense moved for the appointment of a psychologist or psychiatrist to conduct a competency and psyehological/psychiatric evaluation of the defendants. The motion was granted. Following the evaluations, in April 2009 the defendants moved for downward departures from the sentencing guidelines. In December 2009, the defendants moved for and obtained an order authorizing retention of an expert for downward departure examinations. The case itself was scheduled for trial commencing January 25, 2010. On January 8, 2010, Dr. Sanford Jacobson conducted a further psychiatric evaluation of Ms. Torres for purposes of the pending downward departure motion.[5] Dr. Jacobson prepared a report the following day, and the report appears to have been served on the State with a motion for continuance on January 20, 2010.
The downward departure hearing was conducted on January 26, 2010. Although the State was afforded a brief opportunity to discuss Dr. Jacobson’s report with him “out in the hall” before the hearing, there was no pretrial deposition, no 80-day disclosure regarding Dr. Jacobson on a pretrial witness list, and no reasonable opportunity to retain and prepare an opposing mental health expert. At the outset of, and repeatedly throughout, the downward departure hearing, the State raised these points and renewed the State’s request for an opportunity to retain an opposing expert.
The defense argued that the State had already had nine months of notice that Dr. Jacobson had been retained as Ms. Torres’ expert, and the trial court agreed. In fact, however, the State had no evaluations from Dr. Jacobson regarding the specific downward departure mitigators until a few days before the hearing. Earlier motions and orders authorized Dr. Jacobson’s retention but did not disclose that a downward departure evaluation had actually taken place, that a report had issued, or that the defense actually intended to call Dr. Jacobson as a witness until it was too late for a State witness to prepare for the hearing.
Analysis — Mr. Massingill
At oral argument, counsel for both defendants candidly acknowledged that the record did not establish that “the offense was committed in an unsophisticated manner” for purposes of section 921.0026(2)(j). Rather, Mr. Massingill relies upon mitigation under section 921.0026(2)(b), the “defendant was an accomplice to the offense and was a relatively minor participant in the criminal conduct.” Mr. Massingill did not, however, provide competent substantial evidence to support such a ruling. See State v. Ford, 48 So.3d 948 (Fla. 3d DCA 2010). The limited State proffers allowed and considered by the trial court did not satisfy this requirement. As a result, the downward departure order must be reversed.
Analysis — Ms. Torres
In Ms. Torres’ case, the downward departure order included the finding regarding commission in an “unsophisticated manner,” now abandoned by the defense. However, the order also included findings regarding two other statutory mitigators: “the capacity of the defendant to appreciate the criminal nature of the conduct or to *680 conform that conduct to the requirements of the law was substantially impaired,” § 921.0026(2)(c), and “the defendant suffers from adjustment disorder, dysthymic disorder, and possibly a mood disorder, not related to substance abuse or addiction, and requires and is amenable to treatment,” § 921.0026(2)(d).[6] As to each of these findings, the State is correct that it was not afforded adequate notice and an opportunity to prepare its own expert to meet Dr. Jacobson’s report and testimony.
The State argues that the downward departure hearing is subject to Florida Rule of Criminal Procedure 3.216(f):
(f) Court-Ordered Experts for Other Mental Health Defenses. If the notice to rely on any mental health defense other than insanity indicates that the defendant will rely on the testimony of an expert, who has examined the defendant, the court shall upon motion of the state order the defendant be examined by one qualified expert for the state as to any mental health defense raised by the defendant.
Emphasis supplied.
Ms. Torres argues first, that this provision of the rule is inapplicable to a downward departure hearing, and second, that “the State did nothing for nine months after being placed on notice that Ms. Torres’ mental condition would be raised as a ground for her motion to depart downward from the guidelines.” While it is true that Rule 3.216 is in part V of the Rules of Criminal Procedure, “Pretrial Motions and Defenses,” and sentencing is within part XIV of the Rules, “Sentence,” the hearing in this instance was a pretrial hearing conducted to facilitate plea negotiations a few days before the scheduled trial. Although we conclude that Rule 3.216(f) does govern the appointment of an opposing expert for downward departure issues involving mental health,[7] the requirement for reasonable notice and an opportunity to present an opposing expert witness is also a matter of basic due process. And the State did not have “nine months” of prior notice regarding the defendants’ evidence for mitigation. That evidence was not available to the defense until January 9, 2010 and was not disclosed to the State with reasonable advance notice and a fair opportunity to address it.
Regarding the finding for mitigation based on “specialized treatment for a mental disorder” under section 921.0026(2)(d), we recently reaffirmed the further requirement for the defense to “establish, by a preponderance of the evidence, that the Department of Corrections cannot provide the required ‘specialized treatment.’ ” Ford, 48 So.3d at 950 (State v. Gatto, 979 So.2d 1232, 1233 (Fla. 4th DCA 2008) (emphasis supplied)). No such finding was made in this case.

Conclusion

Although both downward departure orders were correct that the defendants had no prior criminal history, that fact is not a statutory basis for a downward departure. Here, the appalling conditions in which the victim was found (while ostensibly in the care of the defendants) and the apparent planning, intention, and guile involved in misapplying the elderly victim’s interest in his residence for very substantial pecuniary gain, support the State’s *681 objections and motion for time to prepare an opposing expert witness.
Each order is reversed and the cases are remanded for farther proceedings.
ROTHENBERG, J., concurs.

. Case No. 3D 10-426.

. Case No. 3D10-427. Ms. Torres and Mr. Massingill are husband and wife.

. The record contains a conflicting reference to the victim as Ms. Torres’ father, but it appears that the victim was an uncle who lived with the defendants and was "considered" by Ms. Torres to be her father.

.The downward departure hearing was conducted two days before the defendants accepted pleas; as to Torres, adjudication was withheld and she was placed on probation for three years with special conditions including a psychiatric evaluation, therapy and compulsory medication. As to Massingill, similar terms were imposed. The State's evidence in opposition to the downward departures was principally introduced through Ms. Torres’ son.

. A separate expert was retained for evaluation of Mr. Massingill, but that expert’s report and testimony were not presented at the downward departure hearing.

. These disorders are asserted to require "specialized treatment” for purposes of paragraph (2)(d).

. Among other reasons, mental health "defenses” and mental health mitigators under section 921.0026 may overlap and may be addressed, as here, by the same defense expert.